IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                Case No. 2:14-cr-164

Charles J. Gudger

OPINION AND ORDER

Defendant was convicted of one count of failure to register as a sex offender in violation of 18 U.S.C. §2250.  By judgment entered on January 21, 2015, he was sentenced to a term of incarceration of 18 months, to be followed by a 5-year term of supervised release.  Defendant began his term of supervised release on May 9, 2016.  On October 10, 2019, the probation officer filed a revocation petition based on defendant's May 23, 2019, misdemeanor conviction for domestic violence in the Municipal Court of Franklin County, Ohio, and his September 10, 2019, arrest for domestic violence and assault.  On June 1, 2020, defendant entered a plea of guilty to felony domestic violence in the Common Pleas Court of Franklin County, Ohio.  He was sentenced to 180 days in jail, with a time-served credit of 180 days.  The court held a final supervised release revocation hearing on October 2, 2020.  Defendant's supervised release was revoked, and he was sentenced to a term of incarceration of 11 months, to be followed by a new 2-year term of supervised release.  His projected release date from the institution is September 3, 2021.

On November 22, 2020, defendant, who is now 62 years old, submitted a request for compassionate release to the warden, claiming that he was immune compromised due to his treatment for breast cancer, and that he had was told in August of 2020 that he had a life expectancy of 11 months.  Doc. 71, Ex. 1.  The warden

denied defendant's request for a reduction, concluding that defendant's medical conditions did not meet the requirements for a terminal illness and that the risk of COVID-19 did not warrant his early release.  Doc. 71, Ex. 2.

On December 16, 2020, defendant filed a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i), as amended by the First Step Act of 2018, arguing that he should be released because he has terminal breast cancer.  Doc. 69.  On January 20, 2021, counsel filed a supplemental motion for compassionate release on defendant's behalf.  Doc. 71.  Counsel argued that defendant is at enhanced risk from COVID-19 due to: his history of breast cancer, including his radiation and chemotherapy treatments which would compromise his immune system; obesity (on September 23, 2020, defendant weighed 358 pounds and had a BMI of $52.87kg/m^2$); hypertension; and a history of kidney disease (excess fluid and cysts).

On February 1, 2021, the government filed a response in opposition to defendant's motion.  Doc. 80.  The government does not contest that defendant has exhausted his administrative remedies.  However, the government notes that the Bureau of Prisons ("BOP") has taken substantial measures to combat the threat of COVID-19, and argues that defendant's motion should be denied because he would be a continuing danger to the community if released.  On February 28, 2021, defendant filed an additional supplement to his motion for compassionate release.  Doc. 82. Additional medical records were docketed on March 1, 2021.  Doc. 82, Ex. 1.

I. Standards for Compassionate Release

Under 18 U.S.C. §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. Nov. 20, 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

II. Defendant's Medical Conditions

Defendant has been diagnosed with hypertension, one of the conditions which presents an increased risk of serious illness from COVID-19. However, there is no report indicating that defendant's hypertension is not well controlled with medication. He has a history of excess fluid and cysts on the kidneys. A radiological exam in March of 2020 showed several cysts on the kidneys, but noted that one cyst was unchanged in size from the 2017 exam. Doc. 71, Ex. 5, pp. 9-10. There is no evidence that this condition causes defendant any problems.

Obesity is another condition which poses a risk of severe illness from COVID-19. However, the medical records do not report any adverse physical problems specifically linked to the defendant's weight. See United States v. Tranter, 471 F. Supp.3d

861, 865 (N.D. Ind. July 8, 2020)(noting that BMI is "a notoriously blunt tool" with clinical limitations, including its inability to differentiate between excess fat, muscle and bone mass, and that defendant had not identified any current medical issues resulting from his obesity).

Defendant has a history of breast cancer.  He completed chemotherapy on August 31, 2017, and radiation treatments in May of 2018.  Doc. 71, Ex. 4.  The record includes reports from Dr. Sanjay Yadav, defendant's treating oncologist, dated November 12, 2019, February 11, 2020, June 10, 2020, and September 23, 2020. Doc. 71, Ex. 4.  The September 23, 2020, report outlined defendant's treatment history. Ex. 4, p. 1.  Dr. Vadav noted that an x-ray on June 11, 2020, revealed a small right upper lobe infiltrate, and a CT scan was requested. Doc. 71, Ex. 4, p. 4.  He concluded that defendant was at stage III breast cancer and continued defendant on Tamoxifen.  Ex. 4, p. 5.  Dr. Vadav also observed that "[n]oncompliance [with treatment] has been a significant issue" and that defendant "has been made aware that significant breaks blunt effectiveness of chemo treatment" and "will increase patient's risk of recurrence of breast cancer." Ex. 4, p. 1.  He also advised defendant that a recurrence of cancer can be a stage IV disease which can present in different parts of the body and is not curable.  Ex. 4, p. 1.  Defendant argues that he believed that he has a shortened life expectancy based on his conversation with Dr. Vadav.  Doc. 82, p. 2.  However, there is no indication in Dr. Vadav's report of September 23, 2020, or his earlier records that he ever diagnosed defendant as having stage IV breast cancer or that he informed defendant that he had a life expectancy of 11 months.

On December 15, 2020, defendant was seen by Dr. Andres S. Carden, a BOP oncologist.  Dr. Carden indicated that he would need to review defendant's outside oncology records and would check a CT scan of his chest.  Doc. 78-4, p. 21.  On January 7, 2021, defendant underwent a CT scan.  The radiologic report stated that the scan revealed a nonspecific enlarged prevascular mediastinal node, potentially metastatic, and "a few small indeterminate pulmonary nodules; small metastases cannot be excluded with certainty."  Doc. 78-4, p. 19.  Dr. Nayan Abrol requested that Dr. Carden review the results of the CT scan.  Doc. 78, p. 3.  Dr. Carden reviewed the scan on January 12, 2021.  Doc. 78, p. 4.  The record does not include any subsequent report from Dr. Carden concerning his analysis of this scan or any subsequent consultations with the defendant.  Although treatment has been delayed, the record does indicate that defendant is scheduled for chemotherapy on March 16, 2021.  Doc. 78-2, p. 16.  Considering defendant's lack of compliance with treatment in the past, he may be more likely to receive this treatment at the BOP facility than he would be if he is released.  Defendant continues to take Tamoxifen, which was prescribed by Drs. Vadav and Carden.  Doc. 84, p. 17.  Although defendant speculates that he could now have stage IV breast cancer, there are no medical records which include this diagnosis or any estimate of his life expectancy.

As to the threat of COVID-19, the medical records indicate that on February 2, 2021, defendant was tested for COVID-19, and the lab reported a positive result.  Doc. 84, pp. 9, 19.  He was asymtomatic and was placed in quarantine for 21 days.  Doc. 84, pp. 4, 12.  On February 11, 2021, defendant tested negative for COVID-19 and continued to be asymptomatic.  Doc. 84, p. 15.  As to the

risk of whether defendant would be exposed to severe symptoms if he is reinfected, the CDC has noted:

> CDC is aware of recent reports indicating that persons who were previously diagnosed with COVID 19 can be re-infected. These reports can understandably cause concern. The immune response, including duration of immunity to SARS-CoV-2 infections is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected.

https://www.cdc.gov/coronavirus/20199-ncov/faq html (last visited February 17, 2021). In short, although the possibility of defendant becoming re-infected with COVID-19 cannot be totally discounted, it is speculative.

The BOP is also working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure that the BOP is prepared to receive and administer the COVID-19 vaccines. See https://www.bop.gov/coronavirus (last checked March 1, 2021). That same website reports that at Butner FCC, 576 staff and 486 inmates have received full doses of the coronavirus vaccine.

The court concludes that the defendant's medical conditions do not currently constitute an extraordinary and compelling reason for his release.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The original offense in this case was serious. According to the presentence investigation report, defendant went to live in Texas in January of 2013 and was still living there in June of 2014, but did not register his change of address as a sex offender. Defendant told his girlfriend in Texas that he wanted to have a

clean slate and not start off as a sex offender.  This demonstrated defendant's lack of respect for the registration laws.  Defendant's sex offender status was based on his 1986 conviction for rape.  The facts underlying that offense included the defendant abducting his estranged wife, Cassandra Gudger, at gun point.  Defendant took his wife to an apartment where he struck her on the head with his fist, threatened to kill her, and forcibly engaged in vaginal intercourse with her.

The alleged violation behavior which led to the revocation of defendant's supervised release was also serious.  According to the violation report, see Docs. 41-1 and 61, on May 23, 2019, defendant pleaded guilty to a charge of domestic violence after striking his then wife, Michelle Gudger, with a small pot, causing a small laceration on her head.  He was later arrested on September 10, 2019, after another dispute with his wife.  On that date, the defendant's dog bit Mrs. Gudger on the leg during the dispute, and defendant became angry and punched Mrs. Gudger in the mouth.  While they were driving to the emergency room to seek treatment for the dog bite, another argument ensued.  When Mrs. Gudger tried to take the car keys at the hospital parking lot, defendant struck her, causing a cut near her eye and swelling.  Defendant was indicted for felony domestic violence on December 20, 2019.  In recorded phone calls from the jail, defendant called his municipal court probation officer a "bitch" and stated, in regard to his wife, that "I want that bitch to suffer."  On June 1, 2020, defendant pleaded guilty to the charge and was sentenced to 180 days in jail.  Defendant's breast cancer did not prevent him from committing these violations.  The violent nature of his conduct highlights the need for the sentence to deter similar conduct in the future and to

protect the public from additional crimes by the defendant.

As to the history and characteristics of the defendant, at the time of his convictions for the offense in this case, defendant was in Criminal History Category III.  His prior record includes a 1979 conviction for petty theft, a 1981 conviction for forgery, the 1989 convictions for abduction, felonious assault, rape, and intimidation of a victim, and a 2005 conviction for attempted failure to provide notice of his address as a sex offender, which he did not report to his parole officer.  After being paroled in 2004, defendant also tested positive for marijuana, failed to attend mandatory sex offender treatment, signed for registered mail containing a $500 check which was not addressed to him, and lived within 1000 feet of a school in violation of state law.  His parole was revoked in October of 2006 due to other parole violations.  He was paroled again in 2008.  In 2009, he was convicted for driving under suspension, and failed to report his arrest to his supervising officer.  Upon his release, defendant plans to reside with his girlfriend, Sunday Milner, in Columbus, Ohio.

Defendant has approximately 6 months remaining to serve on his sentence of 11 months.  He has served less than half of the imposed sentence.  A reduced sentence would not be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from more crimes by the defendant.  The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, arguendo, that defendant's health conditions are sufficient to constitute an "extraordinary and compelling reason" for a sentence reduction, that reason is outweighed by the statutory factors which militate against

8

defendant's early release.

IV. Conclusion

      In accordance with the foregoing, defendant's motion for a reduced sentence (Docs. 69, 71, 75 and 82) is denied.


Date: March 1, 2021                  s/James L. Graham
                                   James L. Graham
                                   United States District Judge